UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **LUIS VELAZQUEZ, ET AL** | \* | **CIVIL ACTION NO. 10-1679** |
| **VERSUS** | \* | **JUDGE MELANÇON** |
| **BRAND ENERGY & INFRASTRUCTURE SERVICES, INC., ET AL** | \* | **MAGISTRATE JUDGE HILL** |

**REPORT AND RECOMMENDATION**

Pending before the undersigned for report and recommendation is the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and Alternative Motion for Order Compelling Arbitration and Staying Proceedings Pending Arbitration filed by defendant, Brand Energy & Infrastructure Services, Inc. ("Brand"), on November 30, 2010.  [rec. doc. 5].  By memorandum dated December 21, 2010, defendant, Bollinger Shipyards, Inc., adopted Brand's argument.  [rec. doc. 15]. Plaintiffs, Luis Velazquez, Bartolo Velazquez, Juan Manuel Perez-Velazquez, Carlos Domingues-Reyes, have filed opposition.  [rec. doc. 22].  Defendants filed reply briefs.  [rec. docs. 18, 20].

On January 19, 2011, oral argument was held in open court, after which I took the motion under advisement.  For the following reasons, I recommend that

the Motion to Compel be **GRANTED**, and that this matter be **STAYED** pending arbitration.

## Factual Background[1]

Plaintiffs, Luis Velazquez, Bartolo Velazquez, Juan Manuel Perez-Velazquez, Carlos Domingues-Reyes, who are Cuban, and Rolando Caballero, who is Honduran, were employees of Tesco of Houma, Inc. ("Tesco"). [rec. doc. 1, ¶ 7]. In March, 2007, Brand Energy & Infrastructure Services, Inc. ("Brand") acquired Tesco. Plaintiffs continued working for Brand/Tesco after the acquisition.

As a condition of employment with Brand, plaintiffs were required to fill out an employment application containing an agreement to arbitrate. This arbitration agreement provides as follows:

### TO BE READ AND SIGNED BY APPLICANT

> I understand my employment is contingent on acceptance of agreement to arbitrate claims, under FAA, and I DO AGREE AND CONSENT that I will settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment, employment and/or cessation of employment with Brand, exclusively by final and binding arbitration before a neutral

---

[1] In considering a motion to dismiss, the allegations in the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 467 (5th Cir. 2006).

> Arbitrator.  By way of example only, such claims include claims under federal, state and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, the law of contract and the law of tort.

[rec. doc. 5, Exhibits D-1, D-2, D-3, D-4].  Luis Velazquez, Bartolo Velazquez and Juan-Manuel Perez-Velazquez signed this agreement on November 7, 2007.  [rec. doc. 5, Exhibits D-1, D-2, D-3].  Carlos Domingues-Reyes did not sign directly underneath  this provision, but did sign the "AUTHORIZATION AND RELEASE" on the following page.  [rec. doc. 5, Exhibit D-3].

Plaintiffs were also provided with a document entitled "Dispute Resolution Program for Employees" (the "Program").  [rec. doc. 5, Exhibit C].  Under the Program, employees had a four-step program for resolving disputes.  Step One was called "OPEN DOOR POLICY AND CHAIN OF COMMAND." Step Two was "BRAND'S EMPLOYEE HOTLINE."  Step Three was "MEDIATION", and step Four was "ARBITRATION."  Employees were free to utilize or bypass Steps One, Two, and/or Three; however, the exclusive form for resolving covered claims that could not be resolved through Steps One-Three was binding arbitration.

The Program contained the following acknowledgment:

**BRAND DISPUTE RESOLUTION PROGRAM ACKNOWLEDGEMENT**

> I have received, read and understand the Brand Dispute Resolution Program for Employees. I also understand and agree that as a condition of my at-will employment and continued employment, I will submit to and seek to resolve any disputes arising out of or relating to my application or candidacy for employment, employment and/or cessation of employment through the Brand Dispute Resolution Program. I understand that this Dispute Resolution Program provides for binding arbitration as the exclusive, final and required method to resolve all covered claims that I otherwise have a right to litigate in court.
>
> I acknowledge that I have had sufficient time to review and consider the Brand Dispute Resolution Program, and to ask whatever questions I may have about the Program to the Company or to my private counsel, before signing this acknowledgement form.

Luis Velazquez, Bartolo Velazquez and Juan-Manuel Perez-Velazquez signed and dated this acknowledgement November 8, 2007. [rec. doc. 5, Exhibits D-1, D-2, D-3]. Carlos Domingues-Reyes signed and dated this acknowledgement November 7, 2007. [rec. doc. 5, Exhibit D-4].

Brand/Tesco entered into a contract in which plaintiffs became the borrowed employees of Bollinger Shipyards, Inc. ("Bollinger"). [rec. doc. 1, ¶ 8]. In 2009, Bollinger, with joint management by Brand/Tesco, sent plaintiffs to sandblast and paint a barge owned by the Louisiana Department of Transportation and Development ("DOTD") at Bollinger's yard in Ameila, Louisiana. [rec. doc.

1, ¶ 9]. During the course of the project, plaintiffs were provided with minimal personal protective equipment, such as dust masks and basic eye protection. [rec. doc. 1, ¶ 12]. On the adjacent DOTD barges, workers were provided with protective clothing and equipment used for handling toxic substances. [rec. doc. 1, ¶ 13]. The workers on the adjacent barges were United States citizens or of a different national origin than plaintiffs. [rec. doc. 1, ¶ 14].

On November 3, 2010, plaintiffs filed suit in this Court against Bollinger, Brand and Tesco under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and Louisiana state law, alleging that they were injured as a result of being assigned to work in toxic conditions without proper personal protective equipment required by law.[2] [rec. doc. 1, ¶]. They assert that defendants discriminated against them on the basis of their national origin.

## LAW AND ANALYSIS

### Standard for 12(b)(1) Motion to Dismiss

The district court has the power to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the

---

[2]On April 16, 2010, plaintiffs filed a Petition for Damages against defendants in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana. [rec. doc. 18, Exhibit P4].

complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). Accordingly, the plaintiffs bear the burden of proof that jurisdiction exists. *Id*.

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Id*. (*citing Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Id*.

### Right to Arbitration

Defendants assert that this case must be dismissed, because plaintiffs' exclusive remedy lies in binding arbitration. Alternatively, defendants argue that the parties should be compelled to arbitrate, and that this action should be stayed pending the arbitration pursuant to the Federal Arbitration Act ("FAA").[3]

The FAA provides as follows:

---

[3] The parties do not dispute that the FAA applies in this case.

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

In determining whether the parties have agreed to arbitrate the dispute in question, courts generally conduct a two-step inquiry. *PaineWebber Incorporated v. The Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 462 (5th Cir. 2001). The first step is to determine whether the parties agreed to arbitrate the dispute in question. *Id*. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute falls within the scope of the arbitration agreement. *Id*.

The arbitration agreement at issue in this case includes "claims under federal, state and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, the law of contract and the law of tort." [rec. doc. 5, Exhibits D-1, D-2, D-3, D-4]. As plaintiffs' claims are under Title VII and Louisiana law,

the second consideration is met. Thus, the remaining issue is whether there is a valid agreement to arbitrate between the parties.

When deciding whether the parties agreed to arbitrate the dispute in question, "courts generally . . . should apply ordinary state-law principles that govern formation of contracts." *Webb v. Investacorp, Inc.,* 89 F.3d 252, 258 (5th Cir. 1996) (*citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)). In applying state law, however, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Id*. (*citing Volt Info. Sciences, Inc. v. Board of Trustees of Leland Standford Jr. Univ.*, 489 U.S. 468, 475-76, 109 S.Ct. 1248, 1253-54, 103 L.Ed.2d 488 (1989)). The second step is to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id*. (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985)).

The question whether the parties formed a valid agreement to arbitrate is a matter governed by principles of state contract law, here, the contract law of Louisiana. *May v. Higbee Co.*, 372 F.3d 757, 764 (5th Cir. 2004). Under Louisiana law, formation of a valid and enforceable contract requires capacity,

consent, a certain object, and a lawful cause. *Wallace v. Shreve Memorial Library Crowe*, 79 F.3d 427, 430 n. 4 (5th Cir. 1996); *Belin v. Dugdale*, 45,405 (La. App. 2 Cir. 6/30/10); 43 So.3d 272, 278; LA. CIV. CODE ANN. arts. 1918, 1927, 1966, 1971, 2029 (2008).

Plaintiffs argue the agreement which they signed was not actually a "contract," but part of the "offer" which plaintiffs accepted when they signed the acknowledgments in the employment application. [rec. doc. 18, p. 22]. The court disagrees. Both the employment applications [rec. doc. 5-2, Exh. D-1, D-2, D-3, D-4 and D-5] and the Brand Dispute Resolution Program [rec. doc. 5-2, Exh. C] contain the plaintiffs' signatures. While counsel for the plaintiffs characterize these documents as offers which were allegedly accepted by plaintiffs, they can as easily be characterized as applications for employment which contained the agreement for arbitration if the applications were accepted and the plaintiffs put to work.

However the documents are characterized, one thing remains true: The plaintiffs agreed that if hired they would arbitrate certain issues if a dispute arose as to those issues. That is what happened here. Accordingly, plaintiffs signed the agreements as a condition of employment, and "employment [is] a valid cause of [a] contract." *McBride v. Mursimco, Inc.*, 2004 WL 1459565 (E.D. La. June 28,

2004) (*quoting Cellular One v. Boyd*, 653 So.2d 30, 34 (La. App. 1st Cir. 1995)).

Furthermore, there is jurisprudential support for enforcing an arbitration clause contained in an employment application. *Id*. (*citing Rogers v. Brown*, 986 F.Supp. 354 (M.D. La. 1997)).

An argument similar to that made by plaintiffs here was raised in *Rogers, supra*. There plaintiff signed an employment application containing an arbitration clause, and, after going to work, sued her employer for sexual harassment, battery, and defamation. After her employer filed a motion to stay proceedings pending arbitration, plaintiff argued that the provision was not binding because she had received no consideration for agreeing to arbitrate. The court rejected this argument, reasoning as follows:

> Plaintiff's cause or consideration for this contract was employment by [employer] for which she was to be compensated. Plaintiff signed the agreement as a condition of employment, and "[e]mployment is a valid cause of [a] contract." [citation omitted]. In this case, plaintiff received consideration in the form of employment for which she was compensated, and [employer] received consideration in the form of labor to be provided by plaintiff. The mutual benefits received by plaintiff and the defendant from the employment agreement were sufficient consideration to support the contract.

*Id*. at 359-60.

Because plaintiffs' employment was a valid cause for the contract, this argument lacks merit.

10

Plaintiffs also argue that the arbitration agreement is unenforceable because their consent was not freely given due to the lack of equal bargaining power. [rec. doc. 18, pp. 18-19]. "Generally speaking, a contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party." *Id*. (*quoting Welch v. A.G. Edwards & Sons, Inc.*, 677 So.2d 520, 524-25 (La. App. 4th Cir. 1996)). A contract is one of adhesion when either its form, print, or unequal terms call into question the consent of the non-drafting party and it is demonstrated that the contract is unenforceable, due to lack of consent or error, which vitiates consent. *Aguillard v. Auction Management Corp.*, 2004-2804 (La. 6/29/05); 908 So.2d 1, 17. Accordingly, even if a contract is standard in form and printed in small font, if it does not call into question the non-drafting party's consent, there is no adhesion. Only when it is demonstrated that the non-drafting party did not consent, or that his consent was vitiated by error, is the contract one of adhesion. *Id*. at 11.

Plaintiffs assert that the contract is uneven because plaintiffs had only one choice: "accept and work, or reject and keep looking." [rec. doc. 18, p. 19]. In support of their argument, plaintiffs cite *Wolf v. Louisiana State Racing Commission*, 545 So.2d 976, 980 (La. 1989), where a jockey was required to accept worker's compensation coverage as a precondition for racing at a private

11

track, and *Standard Coffee Service Co. v. Babin*, 472 So.2d 124, 127 (La. App. 5th Cir. 1985), where an employee was given the option of signing a new employment contract with a binding arbitration clause or being terminated.

As plaintiffs acknowledge, both of these cases were decided prior to *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33, 111 S.Ct. 1647, 1655, 114 L.Ed.2d 26 (1991) (observing that mere inequality in bargaining power is not a sufficient reason to hold that arbitration agreements are never enforceable in employment context), and *Aguillard*, *supra* (holding that presumption of arbitrability exists with regard to enforceability of arbitration agreements under a contract of adhesion analysis).

Here, the undersigned does not find the arbitration clause at issue to be adhesive. The captions above the arbitration provision and acceptance of the Brand Program are both in uppercase letters in boldface type, while the agreement itself is in standard type. Thus, the contract is not in "exceedingly small print." Additionally, plaintiffs had the option of not signing the agreement and finding work at another business if they did not want to be bound to arbitration. *Simpson v. Pep Boys-Manny Moe & Jack, Inc.*, 2003-0358 (La. App. 4 Cir. 4/10/03); 847 So.2d 617, 622. Further, the terms of the arbitration agreement are not unduly burdensome or harsh. Thus, I find that the arbitration agreement is not

unconscionably inequitable and is enforceable.

The undersigned also notes plaintiffs' contention that they had not received copies of the Program and had no memory of it. [rec. doc. 18, p. 4]. However, the record reflects that plaintiffs signed the employment applications and the program receipt acknowledgment. [rec. doc. 5, Exhibits D-1, D-2, D-3, D-4]. There is no contention that their signatures are forged. It is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him. *Aguillard*, 908 So.2d at 17 (*citing Tweedel v. Brasseaux*, 433 So.2d 133, 137 (La.1983)). Each of the plaintiffs in this case signed the contract acknowledging that "I have had sufficient time to review and consider the Brand Dispute Resolution Program, and to ask whatever questions I may have about the Program to the Company or to my private counsel, before signing this acknowledgment form." [rec. doc. 5, Exhibits D-1, D-2, D-3, D-4]

Based on the persuasive authority of Supreme Court and the Fifth Circuit and on the liberal federal policy favoring arbitration, the undersigned finds that this dispute is subject to arbitration as provided for in the documents signed by the plaintifs. *Mouton v. Metropolitan Life Insurance Company*, 147 F.3d 453, 456 (5th

Cir. 1998) (citing *Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)) ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

## Waiver of Arbitration

Alternately, plaintiffs argue that Brand has waived its right to require arbitration by proceeding to litigation without following the steps under its Program and delaying one year and five months before seeking arbitration. [rec. doc. 18, pp. 14-17].

Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party. *In re Mirant Corp.*, 613 F.3d 584, 588 (5th Cir. 2010). There is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden. *Id.*; *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991).

The record reflects that plaintiffs' date of injury is June 25, 2009. [rec. doc. 18, p. 16]. Plaintiffs' attorney sent a letter to Raymond Hendry at Brand on June

25, 2009, notifying him of the claim. [rec. doc. 18, Exhibit P1]. On April 16, 2010, plaintiffs filed a petition for damages in state court against Brand. [rec. doc. 18, Exhibit P4]. Brand filed an answer on June 18, 2010. [rec. doc. 18, Exhibit P8. Brand also filed a dilatory exception. [rec. doc. 18, Exhibit P17]. On June 23, 2010, defendant served interrogatories and requests for production of documents on plaintiffs. [rec. doc. 18, Exhibit P10].

Plaintiffs argue that Brand substantially invoked the power of the state court by engaging in discovery and filing its exception. They further assert that the delay before Brand sought arbitration – one year and five months from the date of injury and seven months from the date that Brand was served with the complaint – weigh in favor of waiver. [rec. doc. 18, pp. 16-17].

However, pre-suit inactivity does not invoke the judicial process and cannot support a finding of waiver. *Walker*, 938 F.2d at 578 (defendant did not waive right to arbitrate even though it conducted minimal discovery and waited 13 months after suit was filed to request arbitration); *Tenneco Resins, Inc. v. Davy International*, 770 F.3d 416 (5th Cir. 1985) (right to arbitrate not waived when defendant sought to have complaint dismissed in its answer because arbitration clause encompassed the issue, although defendant waited eight months to move for a stay pending arbitration and conducted discovery in the interim). Based on

15

these cases, and the minimal activity undertaken by the defendants in state court, the undersigned holds that this argument lacks merit.

## Requested Relief

Brand asserts that this matter should be dismissed or, alternatively, stayed pending arbitration. Section 3 of the FAA, 9 U.S.C. § 3, provides for a stay of legal proceedings whenever the issues in a case are within the reach of an arbitration agreement. *In re Complaint of Hornbeck Offshore (1984) Corporation*, 981 F.2d 752, 754 (5th Cir. 1993). This provision is mandatory: "If the issues in a case are within the reach of the agreement, the district court has no discretion under section 3 to deny the stay." *Id*. (*quoting Midwest Mechanical Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 751 (5th Cir. 1986).[4]

Accordingly, the undersigned recommends that the motion to compel arbitration be **GRANTED**, and that this case be **STAYED** pending arbitration.

## Conclusion

Based on the foregoing, it is recommended that the motion to compel arbitration filed by defendants, Brand Energy & Infrastructure Services, Inc. and

---

[4] The undersigned recognizes that the weight of authority supports dismissal of the case when all of the issues raised must be submitted to arbitration. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992). However, the undersigned finds that in this case, equity dictates that this matter should not be dismissed because of potential prescription issues.

Bollinger Shipyards, Inc., be **GRANTED,** and that this case be **STAYED** and **ADMINISTRATIVELY CLOSED** pending arbitration.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING EITHER THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3d. 1415 (5th Cir. 1996).**

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Signed February 9, 2011, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE